IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| DAE KON KWON, | ) | CIVIL NO. 08-00360 JMS/BMK |
| | ) | |
| Plaintiff, | ) | FINDINGS OF FACT AND |
| | ) | CONCLUSIONS OF LAW |
| vs. | ) | |
| | ) | |
| COSTCO WHOLESALE | ) | |
| CORPORATION, a foreign profit | ) | |
| corporation; DOE ENTITIES 1-10, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

**FINDINGS OF FACT AND CONCLUSIONS OF LAW**

**I.  INTRODUCTION**

The court conducted a non-jury trial in this case on February 23-24 and March 4, 2010.  Before trial, the parties filed joint and separate proposed findings and conclusions and on March 5, 2010, the parties filed post-trial proposed findings and conclusions.  Pursuant to Federal Rule of Civil Procedure 52(a), the following constitute the Court's Findings of Fact ("Findings") and Conclusions of Law ("Conclusions").  To the extent any Findings as stated may also be deemed to be Conclusions, they shall also be considered Conclusions.  Similarly, to the extent any Conclusions as stated may be deemed to be Findings, they shall also be considered Findings.  *See In re Bubble Up Delaware, Inc.*, 684

F.2d 1259, 1262 (9th Cir. 1982).

## II. **OVERVIEW**

On Friday, June 13, 2008, Plaintiff Dae Kon Kwon ("Plaintiff")

tripped and fell (the "Incident") on or near the front-most flatbed cart in a row of

five flatbed carts (the "Subject Flatbeds") at a store owned and operated by

Defendant Costco Wholesale Corporation ("Costco"). On July 22, 2008, Plaintiff

filed this case in Hawaii state court alleging a claim for negligence and seeking

punitive damages. On August 7, 2008, Costco removed the case to this court

pursuant to 28 U.S.C. § 1441.

For the reasons set forth, the court finds that Plaintiff did not prove by

a preponderance of the credible evidence that Costco is liable for any negligence or

that Plaintiff is entitled to punitive damages. Additionally, the court finds that

Plaintiff cannot recover for her injuries because Costco proved by a preponderance

of the evidence that Plaintiff's own negligence leading up to the Incident was

greater than any negligence on the part of Costco.

## III. **FINDINGS OF FACT**

1.    Plaintiff is, and at all times relevant herein was, a resident of the

City and County of Honolulu, State of Hawaii. Parties' Joint Statement of Agreed

Upon Findings of Fact and Conclusions of Law, Doc. No. 115 ("Joint Statement")

Findings of Fact ¶ 1.[1]

2.      At the time of the Incident, Plaintiff was 83 years old.  Plaintiff

testified that she wears glasses for reading, with an eyesight of 20/30.  Joint Ex. 1

at 2; Pl. Test., Tr. Day 1, at 73:25-74:10; Joint Ex. 7 at 1.

3.      Costco is duly organized under the laws of the State of

Washington and is doing business in the State of Hawaii.  At all relevant times,

Costco owned and operated the Costco warehouse in Iwilei ("Warehouse").  Joint

Statement Findings of Fact ¶¶ 2, 3.

4.      The Warehouse is the busiest Costco in the United States.  Over

six thousand transactions took place at the Warehouse on the day of the Incident,

which is a standard number of transactions for a weekday at the Warehouse.

Typically, the Warehouse is busier around lunchtime than it is earlier or later in the

day.  Joint Exs. 16, 17; Nomura Test., Tr. Day 1, at 105:8-11, 111:15-22, 131:17-

19.

5.      Prior to June 13, 2008, Plaintiff visited the Warehouse on a

number of occasions; Plaintiff was not a Costco member but shopped at the

_____

[1]  At trial, the parties stipulated to all of the facts included in the Joint Statement.  Tr. Day 1, at 90:15-20.

Warehouse with her daughter, Helen Kwon.  At no time during Plaintiff's visits to the Warehouse did she perceive the Warehouse as dangerous; she never observed any member, guest, or employee trip over or be struck by a flatbed cart.  Joint Statement Findings of Fact ¶¶ 4, 13.

6.      On Friday, June 13, 2008, Plaintiff visited the Warehouse with her daughter.  Plaintiff and her daughter arrived sometime after the Warehouse opened.  After Plaintiff and her daughter finished shopping, Helen Kwon waited in line at a cash register to pay for her purchases while Plaintiff walked to the restroom by herself.  *Id*. ¶¶ 3, 14.

7.      Plaintiff walked to the restroom along a passageway of the Warehouse that runs behind the cashier lanes from the restrooms to the Warehouse exit (the "exit aisle").  The exit aisle is the busiest aisle in the Warehouse.  Both an Optical Counter and a Hearing Center are positioned along the exit aisle across from the cashier lanes.  Nomura Test., Tr. Day 1, at 108:16-109:5; Joint Ex. 14 (depicting the layout of Warehouse).

8.      After paying for her purchases, Helen Kwon waited for her mother by the Hearing Center.  Joint Statement Findings of Fact ¶ 15.

9.      Costco provides the customers and employees of the Warehouse with carts, including flatbed carts, to transport merchandise, inventory,

or supplies in and around the Warehouse.  The dimensions of Costco's flatbed carts are as follows: 67 and 5/8 inches long from front to back; 24 and 3/4 inches wide at the leading edge; 32 and 1/2 inches wide at the rear; 10 and 11/16 inches high at front-most edge; and 38 and 5/16 inches high from the handle at the rear of the cart to the ground.  Joint Statement Findings of Fact ¶¶ 5, 6.

10.    Costco's flatbed carts can be securely connected end-to-end, which is known as "stacking."  When stacked, a row of five flatbed carts -- like the Subject Flatbeds -- is 210 and 5/8 inches long, or just over seventeen and one-half feet, from the leading edge of the front-most flatbed to the handle of the rear-most flatbed.  *Id*. ¶ 7.[2]

11.    During her previous visits to the Warehouse, Plaintiff observed employees and at least one member using flatbed carts of the sort normally used by Costco members, guests, and employees.  Plaintiff testified that she also observed stacked flatbed carts as depicted in Joint Exhibit 11 at C000066 when visiting the Warehouse.  *Id*. ¶ 5; Pl. Test., Tr. Day 1, at 74:25-75:13.

12.    Costco, through its employees, moves flatbed carts around the Warehouse premises on a regular basis and for a variety of reasons, including

---

[2] Although the parties stipulated that a row of five flatbeds is 210 and 5/8 inches long, the Warehouse Assistant General Manager Keith Noruma testified that the length of five stacked flatbeds is eighteen feet and three inches long (*i.e.*, 219 inches).  Noruma Test., Tr. Day 1, at 128:12-16.

moving flatbed carts to the outside of the store for incoming customers to use. Madamba Test., Tr. Day 2, at 24:7-26:12.

13.    The edges and handle of Costco's flatbed carts are painted orange and the deck of the carts consists of a grid of metal wire, which is unpainted and silver in color.  While the edges of newly painted flatbed carts are bright orange, the paint chips off over time.  Joint Statement Findings of Fact ¶ 8; Joint Ex. 34.

14.    Costco does not repaint flatbed carts as the orange paint is removed by chipping and scuffing over time.  Nomura Test., Tr. Day 1, at 124:18-20.

15.    The Warehouse originally had about 100 flatbed carts when it opened in June 2002.  The Warehouse did not acquire any additional flatbed carts between June 2002 and the Incident.  *Id*. at 124:21-125:8, 125:15-21.

16.    Costco employees are aware that members, guests or employees could come into contact with or trip over almost any object in an aisle or passageway.  Costco and its employees know that the flatbed carts used by Costco present potential tripping hazards to customers at the Warehouse because they protrude about five feet at about ankle level.  The tripping hazard associated with a flatbed cart is increased when multiple flatbeds are stacked together because it

extends the tripping hazard. In the case of five nested flatbeds, the tripping hazard extends over seventeen and one-half feet to eighteen feet and three inches from the handler. Joint Statement Findings of Fact ¶ 10; Nomura Test., Tr. Day 1, at 106:12-14, 113:4-10.

17.    At all times relevant to this action, Costco employees were instructed to handle flatbed carts in such a way to be mindful of the safety of people walking in the Warehouse. Costco has no policy, written or otherwise, limiting the number of flatbed carts that its employees may move at one time. Joint Statement Findings of Fact ¶¶ 9, 12. Nevertheless, Costco's Cart Handler Training Manual cautions employees to avoid stacking flatbeds if possible. Joint Ex. 26 at 11.

18.    On the day of the Incident, a constant flow of customers was entering the exit aisle. The court infers, adversely to Costco, that the exit aisle was very crowded at the time of the Incident.[3] Madamba Test., Tr. Day 2, at 36:23-37:3.

19.    On the day of the Incident, Costco employee Macy Madamba ("Madamba") collected the Subject Flatbeds from various cashier lanes near the

---

[3] The court makes this adverse inference pursuant to its February 17, 2010 Order Granting in Part and Denying in Part Plaintiff's Motion in Limine #1 Regarding Spoliation of Evidence and Sanctions. *See* Doc. No. 113.

restrooms between 12:30 and 1:00 p.m.  The Subject Flatbeds had been left in the

cashier lanes after Costco employees used them to restock the Warehouse shelves

prior to the Warehouse opening on that day.  *Id*. at 24:7-26:4, 27:5-28:16.

20.     Madamba testified that typically Costco employees move

flatbed carts away from the cashier lanes earlier in the day than 12:30 or 1:00 p.m.

so that the flatbed carts are usually moved prior to the lunchtime rush.  On the day

of the Incident, however, Madamba's supervisor directed her to move the Subject

Flatbeds between 12:30 and 1 p.m.  *Id*. at 26:2-18, 31:5-7.

21.     Neither Costco nor anyone else photographed the Subject

Flatbeds involved in the Incident.  *Id*. at 48:18-49:21.

22.     Because no photographs were taken of the Subject Flatbeds, the

court is unable to precisely determine the extent to which the orange paint had

chipped off of the Subject Flatbeds.  The court finds, however, that the paint on the

edges of the Subject Flatbeds had substantially chipped off while the paint on the

handles had not chipped off, based on the age of the flatbed carts, the fact that

Costco does not repaint flatbed carts, and the condition of the sample flatbed carts

shown in Exhibit 34.  *See* Joint Ex. 34.

23.     The court finds Madamba's testimony that the front cart of the

Subject Flatbeds was "orange" is not credible to the extent that it suggests that the

cart was exclusively orange without any chips in its paint.  Madamba Test., Tr. Day 2, at 57:12-58:5.

24.     Despite the substantial chipping in the paint of the Subject Flatbeds and the very crowded conditions in the exit aisle, visual cues by which pedestrians in the Warehouse might detect and perceive the Subject Flatbeds included: the length of the Subject Flatbeds; the over three foot height of the handles; the orange paint on the handles; the silver-colored grids of metal wire at least 24 and 3/4 inches wide that spanned the bottoms of the carts; and some amount of orange paint on the edges of the carts.

25.     On the day of the Incident, once Madamba had stacked the Subject Flatbeds, she proceeded to push the Subject Flatbeds along the exit aisle, moving from the direction of the bathrooms toward the exit.  *Id*. at 31:22-32:5.

26.     When Madamba reached the section of the exit aisle adjacent to the Optical Counter, she stopped moving the Subject Flatbeds and came to a complete stop.  Madamba testified credibly that she stopped moving the Subject Flatbeds because pedestrian traffic in the exit aisle prevented her from proceeding safely.  *Id*. at 37:19-38:18, 41:9-19, 62:6-21.  Madamba's testimony that she stopped moving the Subject Flatbeds was entirely consistent with the witness report she filled out the day of the Incident.  *Id*. at 63:1-64:9; Joint Ex. 35 ("I was

at the back of a row of 5 flatbeds that was not moving.").  The court finds entirely credible Madamba's testimony that the Subject Flatbeds were stationary prior to and during the Incident.

27.     Madamba also testified that she must take three steps and lean forward to start moving a series of five stacked flatbeds in a full roll.  Madamba Test., Tr. Day 2, at 60:16-20;

28.     Madamba remained stationary for two to ten minutes with the Subject Flatbeds while observing the crowd and waiting for the exit aisle to clear. Prior to the incident, Madamba was not looking in the direction of the Subject Flatbeds she was handling, but was looking over her right shoulder at the traffic flow coming from the cashier lanes in order to determine if she could begin to move the Subject Flatbeds.  *Id*. at 38:8-39:1.

29.     After using the restroom, Plaintiff walked along the exit aisle toward the Hearing Center to meet her daughter.  Plaintiff was looking down at her path of travel as she walked.  Joint Statement Findings of Fact ¶¶ 17-19.

30.     Costco employee Justin Ogasawara ("Ogasawara") testified credibly that he observed Plaintiff walking in the exit aisle in a straight line parallel to Madamba and the Subject Flatbeds and then turning forty-five degrees and

walking in the direction of the Hearing Center.  Ogasawara Test., Tr. Day 1, at 156:21-157:8.

31.     Madamba testified credibly that she did not observe Plaintiff approach the Subject Flatbeds because she was looking toward the cashier lanes for traffic.  As a result, Madamba did not warn Plaintiff about the Subject Flatbeds because she did not see Plaintiff walking toward them.  Madamba Test., Tr. Day 2, at 41:2-41:8.

32.     No party introduced any evidence that Madamba -- or any other Costco employee -- had notice or should have had notice that Plaintiff failed to see the Subject Flatbeds.

33.     The Incident occurred around 1:00 p.m. when Plaintiff's left leg made contact with the right side of the front-most cart in the line of Subject Flatbeds, causing her to fall onto the front-most cart.  No witness directly observed the Incident.  Joint Statement Findings of Fact ¶¶ 22, 23; Madamba Test., Tr. Day 2, at 40:2-41:1.

34.     Plaintiff testified that people were not blocking her path of travel as she moved toward the Hearing Center prior to the Incident.  Plaintiff testified that she could see her daughter as she walked toward the Hearing Center,

and that she was looking at the ground as she walked.  Pl. Test., Tr. Day 1, at 77:22-24, 78:25-79:16, 80:15-21.

35.     Plaintiff nevertheless did not see the Subject Flatbeds until she fell onto them.  Instead, Plaintiff only recalls feeling something on her leg and then falling.  Joint Statement Findings of Fact ¶¶ 22-23; Pl. Test., Tr. Day 1, at 57:1-8, 80:25-81:5.

36.     Plaintiff contends that her failure to see the Subject Flatbeds before she fell is evidence that the Subject Flatbeds were moving.  The court disagrees, and finds that Plaintiff's testimony did not offer any insight into whether the Subject Flatbeds were moving or how the accident occurred.

37.     Similarly, Helen Kwon's testimony did not offer any insight into whether the Subject Flatbeds were moving or how the accident occurred.

38.     Ogasawara testified that although he did not witness the Incident, he was working in a cashier lane and from there, he looked up twice -- observing Plaintiff shortly before and after the Incident.  Ogasawara initially testified he was certain that the Subject Flatbeds were not moving either time he looked up and observed Plaintiff.  Ogasawara Test., Tr. Day 1, at 148:3-7, 157:11-16.  Ogasawara then testified, however, that the Subject Flatbeds were moving slowly when he first observed Plaintiff prior to the Incident.  *Id.* at 166:13-167:6.

12

39.     Ogasawara also testified that the Subject Flatbeds did not move during the interim in which he looked away from Plaintiff.  *Id*. at 157:17-22. Ogasawara then inconsistently testified, however, that the Subject Flatbeds had moved between the time he looked down and looked back up.  Ogasawara testified that the Subject Flatbeds had moved "a little more forward" by "maybe like a foot or so."  *Id*. at 165:10-18, 167:20-168:2.

40.     Given the inconsistencies in Ogasawara's testimony, the court finds Ogasawara's testimony as to whether the Subject Flatbeds were moving immediately before the Incident not credible.  The court does not find that Ogasawara was intentionally misleading the court, but that he did not have a clear recollection of what he observed.

41.     In sum, the court finds no credible evidence that the Subject Flatbeds were other than stationary immediately prior to and at the time of the Incident.

42.     The court finds it is more likely than not that Plaintiff came into contact with the Subject Flatbeds because she failed to notice them rather than because of any action or inaction on the part of a Costco employee.

43.     While past accidents involving flatbed carts are not directly relevant to Plaintiff's claims, the ratio of accidents to transactions suggests that

Costco's practices and procedures related to maintaining and handling flatbed carts are effective in preventing accidents including accidents resulting in personal injury.  Nomura Test., Tr. Day 1, at 133:14-135:25; Joint Exs. 30-31.

44.     As a result of the Incident, Plaintiff suffered a contusion and abrasion/laceration of her left shin.  Plaintiff also required surgery to repair fractures of her left wrist and dental work to repair two cracked teeth.  Plaintiff's injuries resulted in permanent scarring along her wrist and forearm, permanent disfigurement of her wrist, and permanent false teeth.  Joint Statement Findings of Fact ¶ 24; Pl. Test., Tr. Day 1, at 57:18-58:14, 68:18-22; Helen Kwon Test., Tr. Day 1, at 40:18-40:21.

45.     Plaintiff left the subject Costco by ambulance, and was admitted to Queen's Medical Center, where she stayed for two nights.  Plaintiff has incurred $28,966.00 in medical expenses to date as a result of the incident.  Mrs. Kwon's injuries caused substantial pain and suffering and loss of enjoyment of life to her.  Helen Kwon Test., Tr. Day 1, at 31:19-21, 36:20-22; Stipulation re: Admission of Trial Exhibits, Ex. 3.

## IV.  CONCLUSIONS OF LAW

1.     The court has jurisdiction of this diversity action pursuant to 28 U.S.C. §§ 1332 and 1441(a).  Joint Statement Conclusions of Law ¶ 1.

2.      Actionable negligence is "the failure to do what a reasonable and prudent person would ordinarily have done under the circumstances of the situation, or doing what such person would not have done." *Young v. Price*, 47 Haw. 309, 314, 388 P.2d 203, 207 (1963) (internal citation omitted); Parties' Joint Supplemental Statement Regarding Legal Standards, Doc. No. 123 ("Parties' Joint Legal Standards") at 3.

3.      In a negligence action brought against a possessor of land, the possessor owes a duty toward persons using that land if a condition exists upon the land which poses an unreasonable risk of harm to persons using the land, and the possessor knows or should have known of the unreasonable risk.  The possessor owes a duty to take reasonable steps to eliminate the unreasonable risk or to adequately warn users against it.  *Corbett v. AOAO Wailua Bayview Apartments*, 70 Haw. 415, 417, 772 P.2d 693, 695 (1989); *see also Gibo v. Honolulu*, 51 Haw. 299, 301, 459 P.2d 198, 200 (1969) ("[A]n occupier of land has a duty to use reasonable care for the safety of all persons reasonably anticipated to be upon the premises, regardless of the legal status of the individual.") (citing *Pickard v. City & County of Honolulu*, 51 Haw. 134, 135, 452 P.2d 445, 446 (1969)) (brackets in original); Parties' Joint Legal Standards at 3-4.

4.      In a negligence action brought against a possessor of land,

15

"[t]he focus of the test for negligence should be . . . on the unreasonableness of the risk of harm, not on the degree of dangerousness of the condition." *Corbett*, 70 Haw. at 417, 772 P.2d at 695; Parties' Joint Legal Standards at 7.

5.       "[W]hen reasonable steps are taken to eliminate the unreasonable risk of harm, no duty to warn remains." *Richardson v. Sport Shinko (Waikiki Corp.)*, 76 Haw. 494, 503, 880 P.2d 169, 178 (1994); Parties' Joint Legal Standards at 6.

6.       "It is well-settled that, in any negligence action, the plaintiff -- not the defendant -- has the burden of proving the requisite elements, including legal causation." *Miyamoto v. Lum*, 104 Haw. 1, 15, 84 P.3d 509, 523 (2004).  "It is plaintiff's burden to prove defendant's negligence by a preponderance of the evidence." *Murakami v. County of Maui*, 6 Haw. App. 516, 522, 720 P.2d 342, 346 (1986), *aff'd by,* 69 Haw. 43, 731 P.2d 787 (1987); Parties' Joint Legal Standards at 2.

7.       Although "contributory negligence shall not bar recovery in any action by any person," a plaintiff cannot recover if his negligence was "greater than the negligence of the person . . . against whom recovery is sought . . . ." Hawaii Revised Statutes ("HRS") § 663-31(a); Parties' Joint Legal Standards at 10-11. When contributory negligence is found, the court in a nonjury trial must state the

degree of negligence of each party, expressed as a percentage.  *Id*. § 663-31(b)(2).

8.     The Hawaii Supreme Court has explained that "[a] plaintiff is required to exercise that amount of care which would be exercised by a person of ordinary prudence in the same circumstances."  *Young*, 47 Haw. at 316, 388 P.2d at 208.  Specifically,

> [e]veryone is generally bound to exercise reasonable vigilance to discover perils which may prove to be a menace to personal safety.  While persons walking on a sidewalk have a right to assume that it is reasonably safe for ordinary travel and are not obliged to keep their eyes continuously on the way, [] pedestrians must be observant of how and where they are going, so as to avoid dangers which ordinary prudence would disclose.  They must use their senses, and cannot close their eyes to obvious and manifest defects and dangers and proceed blindly and heedlessly into them and recover for injuries due to open and readily apparent defects or obstructions which their observation, prudently exercised, ought to have detected and avoided.  Barring exculpable circumstances, such as justified distraction, or momentary forgetfulness, one who fails to see and avoid an obvious obstruction in or on a sidewalk just ahead in plain sight is guilty of contributory negligence as a matter of law.

*Id*. at 316-17, 388 P.2d at 208 (citations omitted); Parties' Joint Legal Standards at 11-12.

9.     A defendant bears the burden of proving a plaintiff's contributory negligence by a preponderance of the evidence.  *Tsugawa v. Reinartz*,

56 Haw. 67, 73 n.2, 527 P.2d 1278, 1283 n.2 (1974).  "It is defendant's burden to prove plaintiff['s] negligence (lack of due care) by a preponderance of the evidence."  *Murakami*, 6 Haw. App. at 522, 720 P.2d at 346; Parties' Joint Legal Standards at 2.

10.     Plaintiff failed to prove by a preponderance of the evidence that the nature or design of flatbed carts at the Warehouse presented an unreasonable risk of harm to any person inside the Warehouse.

11.     The court finds testimony that flatbed carts can pose a risk of tripping does not establish that the flatbeds constitute an unreasonable hazard.  The relative absence of accidents involving flatbed carts further suggests that the flatbed carts do not present a dangerous or unreasonably hazardous condition.

12.     Just as there is no evidence that a single flatbed cart constitutes an unreasonable hazard, there is no credible evidence -- and the court does not find -- that a stationary row of five flatbed carts is, without more, an unreasonable hazard.

13.     Further, even if the court were to find that the Subject Flatbeds presented an unreasonable risk, the court secondarily finds that Costco proved by a preponderance of the evidence that Plaintiff's negligence was greater than that of Costco.

14.     Costco and its employees did act in ways that increased the risk of harm to Plaintiff.  Costco presented no explanation for why Warehouse employees failed to remove the Subject Flatbeds, a known tripping hazard, from the Warehouse prior to its opening on the morning of the Incident.  By waiting until more crowded business hours to move the Subject Flatbeds, Costco increased the risk that someone would trip on the Subject Flatbeds.

15.     Costco also increased the risk of harm to Plaintiff by failing to repaint the Subject Flatbeds as the orange paint chipped off.  By repainting the Subject Flatbeds, Costco would have increased their visibility.

16.     Madamba's supervisor further increased the risk of harm to Plaintiff by directing Madamba to move the Subject Flatbeds through the busiest aisle in the Warehouse during peak shopping hours.

17.     Madamba then increased the risk of harm to Plaintiff by stacking the Subject Flatbeds and failing to keep her eyes on the Subject Flatbeds at all times.

18.     Despite these increased risks created by Costco and its employees, however, Costco proved by a preponderance of the evidence that Plaintiff failed to exercise the amount of care that would be exercised by a person of ordinary prudence in the same circumstances.

19.    Even with the crowded conditions in the Warehouse, the court finds that Plaintiff could clearly see her path of travel because Plaintiff testified that people were not blocking her way and she could see her daughter as she walked toward the Hearing Center.  Pl. Test., Tr. Day 1, at 77:22-24, 78:25-79:11.

20.    Further, despite the chipping of the paint off of the edges of the Subject Flatbeds, substantial visual clues remained by which Plaintiff should have detected and perceived the Subject Flatbeds.  Specifically, as discussed in the Findings, visual cues that should have alerted Plaintiff to the Subject Flatbeds included the length of the Subject Flatbeds; the over three foot height of the handles; the orange paint on the handles; the silver-colored grids of metal wire at least 24 and 3/4 inches wide that spanned the bottoms of the carts; and some amount of orange paint on the edges of the carts.

21.    Plaintiff failed to see and avoid the Suspect Flatbeds even though she could clearly see her path of travel and had substantial visual cues alerting her to the Subject Flatbeds.  Thus, Plaintiff "fail[ed] to see and avoid an obvious obstruction . . . just ahead in plain sight."  *Young*, 47 Haw. at 317, 388 P.2d at 208.

22.    Taking into consideration the degree of Costco's negligence and Plaintiff's failure to see and avoid such an obvious obstruction that was just

ahead of her and in plain sight, the court finds that Costco has proven by a

preponderance of the evidence that Plaintiff acted more negligently than Costco.

HRS § 663-31(a).  Specifically, the court finds that Plaintiff was seventy percent at

fault as a result of her failure to see and avoid the obvious obstruction when she

had a clear path of travel.  The court finds that Costco was thirty percent at fault

based on the condition of the Subject Flatbeds and the time and manner in which

Costco employees decided to move the Subject Flatbeds.

23.     In sum, the court concludes that Plaintiff failed to prove by a

preponderance of the evidence that the Subject Flatbeds created an unreasonable

risk of harm.  Accordingly, Plaintiff failed to prove by a preponderance of the

evidence that Costco is liable for negligence.  Further, even if the Subject Flatbeds

did constitute a hazardous condition for which Costco could be liable, Plaintiff

cannot recover because Costco proved that Plaintiff's negligence in causing the

Incident was greater than the negligence of Costco.

///

///

///

///

///

## V.  **CONCLUSION**

Based on the Findings and Conclusions, the court orders that

Judgment shall enter in favor of Costco on all claims.

The Clerk of Court is directed to close the case.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, March 15, 2010.



 /s/ J. Michael Seabright
J. Michael Seabright
United States District Judge

*Kwon v. Costco Wholesale Corp.*, Civ. No. 08-00360 JMS/BMK, Findings of Fact and Conclusions of Law